UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------ X

NEM RE RECEIVABLES, LLC,           :
                                   :
                Plaintiff,         :
                                   :
     -against-                     :
                                   :
FORTRESS RE, INC.,                 :
                                   :
                Defendant.         :

------------------------------ X

```
┌──────────────────────────────┐
│ USDC SDNY                     │
│ DOCUMENT                      │
│ ELECTRONICALLY FILED          │
│ DOC #:_____         │
│ DATE FILED: 5/5/16            │
└──────────────────────────────┘
```

15 Civ. 3875

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

As the assignee of the reinsurance receivables of NEM Re-Insurance Corporation, formerly known as Federated Reinsurance Company ("Federated"), plaintiff NEM Re Receivables, LLC ("NEM Re") sought (1) an accounting for amounts owed by defendant Fortress Re, Inc. ("Fortress"); (2) the amount found to be due as a result of the accounting, including prejudgment and post-judgment interest; and (3) attorneys' fees and costs.[1] (Dkt. No. 1.)

On March 24, 2016, this Court issued an order granting Fortress's motion for summary judgment ("March 24 Order") finding that (1) NEM Re failed to meet the requirements of a cause of action for an accounting or, in the alternative, (2) the statute of limitations for a breach of contract action had run prior to the filing of this action. (Dkt. No. 31.)

---

[1] The facts of this case were set forth in detail in the Court's previous order dated March 24, 2016 (Dkt. No. 31), and familiarity with that decision is assumed.

-1-

On April 7, 2016, NEM Re filed a motion for reconsideration pursuant to Local Rule 6.3 and Rule 59(e) and/or Rule 60 of the Federal Rules of Civil Procedure ("Motion," Dkt. No. 35) arguing: (1) NEM Re was not aware that the deadline for NEM Re's response to the motion for summary judgment was still in effect (Dkt. No. 36 at 3) and (2) if permitted to present admissible evidence, NEM Re would demonstrate that Fortress was a fiduciary for NEM Re such that a claim for accounting or breach of contract would be viable (id. at 4-6). NEM Re requests that the Court (1) allow NEM Re to submit evidentiary materials for the Court's consideration and (2) on reconsideration and upon review of the evidentiary materials, vacate the dismissal of the action. (Id. at 6.)

Fortress submitted an opposition to NEM Re's Motion on April 21, 2016 ("Opposition," Dkt. No. 37) arguing: (1) under Rule 60(b) of the Federal Rules of Civil Procedure ("Rule 60(b)"), NEM Re has not satisfied the standard for "excusable neglect" (id. at 2-3); (2) NEM Re does not offer any new evidence to rebut the Court's finding in the March 24 Order that there is no adequate remedy at law for an accounting claim (id. at 4); and (3) NEM Re does not purport to offer evidence that the

statute of limitations for a breach of contract action was tolled (id. at 4-5).

NEM Re filed a reply memorandum on April 28, 2016 ("Reply," Dkt. No. 38) contending that (1) pursuant to Rule 60(b), there was excusable neglect; (2) the Court has broad discretion under Rule 60(b) in the case of a default judgment; (3) NEM Re has met the Second Circuit's requirements for vacating a default judgment; (4) the statute of limitations has not yet started to run on the accounting claim as Fortress has not repudiated its obligations or terminated the fiduciary relationship; (5) even if NEM Re has an adequate remedy at law, dismissal is not warranted as the statute of limitations for a breach of contract action is tolled while a fiduciary relationship exists; and (6) because the uncontested evidence put forth by NEM Re supports the conclusion that Fortress is a fiduciary for Federated, it would be manifest injustice to let the March 24 Order stand.

For the reasons stated below, NEM Re's Motion is DENIED.

## I.   LEGAL STANDARD

A.   MOTION FOR RECONSIDERATION PURSUANT TO RULE 59(e) AND LOCAL RULE 6.3[2]

Reconsideration of a previous order by the court is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (internal citations and quotation marks omitted). "The provision for reargument is not designed to allow wasteful repetition of arguments already briefed, considered[,] and decided." Schonberger v. Serchuk, 742 F. Supp. 108, 119 (S.D.N.Y. 1990). "The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4478 at 790 (2d ed.)). To these ends, a request for reconsideration under Local Rule 6.3 ("Rule 6.3") must point to controlling law

---

[2] NEM Re filed a motion for reconsideration pursuant to Local Rule 6.3 ("Rule 6.3") and Rule 59(e) of the Federal Rules of Civil Procedure ("Rule 59(e)"). The legal standards governing Rule 59(e) and Rule 6.3 are the same. See Glendora v. Pinkerton Sec. & Detective Servs., No. 98 Civ. 5123, 1999 WL 46633, at *1 (S.D.N.Y. Feb. 1, 1999).

or factual matters put before the court in its decision on the underlying matter that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court. See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

Rule 6.3 is intended to "'ensure the finality of decisions and to prevent the practice of a losing party . . . plugging the gaps of a lost motion with additional matters.'" S.E.C. v. Ashbury Capital Partners, No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting Carolco Pictures, Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)). A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and prevent Rule 6.3 from being used to advance different theories not previously argued or as a substitute for appealing a final judgment. See Montanile v. Nat'l Broad. Co., 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002); Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999).

B.   MOTION FOR RECONSIDERATION PURSUANT TO RULE 60(B)

Rule 60(b) enumerates the reasons for which a court may relieve a party from a final judgment. See Fed. R. Civ. P. 60(b). Rule 60(b) provides an equitable remedy that

"preserves a balance between serving the ends of justice and ensuring that litigation reaches an end within a finite period of time." Paddington Partners v. Bouchard, 34 F.3d 1132, 1144 (2d Cir. 1994) (internal quotation marks omitted). As an equitable remedy, Rule 60(b) "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice [and] it constitutes a grand reservoir of equitable power to do justice in a particular case." Matarese v. LeFevre, 801 F.2d 98, 106 (2d Cir. 1986) (internal citations and quotation marks omitted).

NEM Re brings the instant motion under Rule 60(b)(1), which provides that a court may relieve a party from a final judgment based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Factors to be considered in evaluating excusable neglect include "'[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.'" Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366 (2d Cir. 2003) (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)).

## II.  **DISCUSSION**

The Court will first consider NEM Re's motion for reconsideration pursuant to Rule 59(e) and Rule 6.3.

A.   MOTION FOR RECONSIDERATION PURSUANT TO RULE 59(e) AND RULE 6.3

1.   Intervening Change Of Controlling Law

The first major ground justifying reconsideration is an intervening change in controlling law. See Virgin Atl. Airways, Ltd., 956 F.2d at 1255. NEM Re's Motion cites no controlling law overlooked by the Court that might "reasonably be expected to alter" the outcome of the March 24 Order. See Shrader, 70 F.3d at 257. The Court therefore finds that there has been no "intervening change of controlling law" justifying reconsideration of the March 24 Order. See Virgin Atl. Airways, Ltd., 956 F.2d at 1255.

2.   Availability Of New Evidence

The second major ground justifying reconsideration is the availability of new evidence. See Virgin Atl. Airways, Ltd., 956 F.2d at 1255. For evidence to be considered "newly available," it must be "evidence that was truly newly discovered or could not have been found by due diligence." Space Hunters, Inc. v. United States, 500 F. App'x 76, 81 (2d Cir. 2012) (internal quotation marks omitted). "A motion to reconsider is not petitioner's

-7-

opportunity to put forward evidence that he could have, but failed, to provide the Court when the Court initially considered the motion." Muyet v. United States, No. 03 Civ. 4247, 2009 WL 2568430, at *3 (S.D.N.Y. Aug. 19, 2009); see also Davidson v. Scully, 172 F. Supp. 2d 458, 463 (S.D.N.Y. 2001) (precluding movant from offering "additional evidence not previously submitted to the Court"); Goldstein v. New York, No. 00 Civ. 7463, 2001 WL 893867, at *1 (S.D.N.Y. Aug. 7, 2001) (holding that a motion to reconsider is not an opportunity "to put forward additional arguments which the movant could have made, but neglected to make before judgment") (internal quotation marks omitted).

NEM Re states that although the Court endorsed the proposed joint scheduling report for the motion for summary judgment ("Joint Scheduling Report," Dkt. No. 17), NEM Re "did not remember that the Court had adopted the parties' schedule for further briefing on the converted motion" and that "[h]ad Plaintiff recognized that the February 15[,] [2016] deadline was still in effect, it would have sought an extension of time[.]" (Dkt. No. 36 at 3.) NEM Re further argues that NEM Re "had every intention of presenting . . . [admissible] evidence[] and requests that the Court provide it with an opportunity to do so now." (Id.)

Upon review of the docket for this action, the Court notes that on November 25, 2015, NEM Re requested an extension of time for formal discovery and for leave to amend the complaint.[3] (Dkt. No. 25.) Magistrate Judge Maas held a telephone conference with the parties on December 21, 2015. (See Dkt. Minute Entry for Dec. 21, 2015.) During the telephone conference and in a subsequent order dated December 21, 2015 (Dkt. No. 30), Judge Maas denied NEM Re's requests to extend formal discovery and for leave to amend the complaint without prejudice to their renewal after the pending motion for summary judgment was decided. (Id.) During the telephone conference, Judge Maas also informed the parties to advise him of any further discovery disputes or if the parties would like to revisit the issue of extending the time for formal discovery. However, neither party informed this Court or Judge Maas of any other issues with discovery, including the delays NEM Re outlines in its Motion. (See Dkt. No. 36 at 2-3.)

The Motion is not NEM Re's "opportunity to put forward evidence that [it] could have, but failed, to provide the Court when the Court initially considered the motion." Muyet, 2009 WL 2568430, at *3; see also Davidson, 172 F.

---

[3] NEM Re also requested leave to renew its motion for a temporary restraining order. (Dkt. No. 25.) This Court denied that request on November 25, 2015. (Dkt. No. 26.)

Supp. 2d at 463; <u>Goldstein</u>, 2001 WL 893867, at *1. Therefore, since NEM Re failed to file an additional opposition to the motion for summary judgment or to inform the Court of delays in the discovery process and request an extension of the deadline, reconsideration of the March 24 Order is not warranted on this basis.

    3.  <u>Need To Correct Clear Error Or Prevent Manifest Injustice</u>

Finally, the third major ground justifying reconsideration is the "need to correct a clear error or prevent manifest injustice." <u>Virgin Atl. Airways, Ltd.</u>, 956 F.2d at 1255 (internal quotation marks omitted).

    a.  <u>Requirements for a Claim of Accounting</u>

NEM Re first argues that it would be "manifest injustice" if the Court refused to grant reconsideration of the March 24 Order and permit NEM Re to submit evidence that Fortress was a fiduciary for Federated. (<u>See</u> Dkt. No. 36 at 6.) Assuming that the evidence NEM Re would provide to the Court could establish a fiduciary relationship,[4] NEM Re has failed to address the second basis upon which the Court granted summary judgment for failure to meet the

---

[4] In the Motion, NEM Re included language from the agreement between Fortress and Federated. (Dkt. No. 36 at 5.) Even though it is unclear from that language whether the parties intended to create a confidential or fiduciary relationship, the Court will assume for purposes of this Motion that NEM Re could establish that Fortress was a fiduciary for Federated.

requirements for a claim of accounting: no adequate legal remedy.

In the March 24 Order, the Court stated that "[a]n accounting claim is not proper where money damages are recoverable under alternative causes of action for the same injury." (Dkt. No. 31 at 14) (quoting CSI Inv. Partners II, L.P. v. Cendant Corp., 507 F. Supp. 2d 384, 425 (S.D.N.Y. 2007) aff'd sub nom. CSI Inv. Partners II, L.P. v. Cendant Corp., 328 F. App'x 56 (2d Cir. 2009)). Since NEM Re was seeking monetary damages in the amount found to be due from the accounting, including prejudgment and post-judgment interest, the Court found that a claim for accounting was not proper. (Id. at 14-15.) In the Motion, NEM Re has failed to address this requirement that there be no adequate remedy at law, and therefore, the Court finds that there is no manifest injustice in letting the Court's decision that NEM Re has failed to meet the requirements for a cause of action for accounting stand.

b.   Statute of Limitations

Additionally, in the March 24 Order, the Court found that the "essence" of NEM Re's claim was actually for breach of contract. (Id. at 16.) In determining when the statute of limitations began to run for a breach of contract cause of action, the Court found that NEM Re had

-11-

the legal right to demand payment when the Commissioner of Insurance of the State of New York assigned all of Federated's uncollected accounts receivable to NEM Re in 2004. (Id. at 17-18.) Therefore, the statute of limitations began to run in 2004. Since the statute of limitations would have expired in 2010, the burden shifted to NEM Re to submit evidence of tolling. (Id. at 18.) Since NEM Re had not provided any evidence of tolling, the Court found that no genuine issue of material fact remained as to whether NEM Re had a viable claim for breach of contract. (Id. at 19.)

In its Motion, NEM Re first contends that because Fortress was a fiduciary, the statute of limitations is tolled until Fortress repudiates the trust. (Dkt. No. 36 at 4-6; Dkt. No. 38 at 5-6.) This argument is without merit. As outlined above, it is not sufficient to establish that Fortress is a fiduciary because NEM Re has failed to meet at least one of the remaining requirements for a claim of accounting. Therefore, the statute of limitations issues relevant to an accounting cause of action are irrelevant.

NEM Re then claims that "Fortress reaffirmed its status with respect to the FR account in May of 2009, comfortably within the statute of limitations for contract and accounting actions." (Dkt. No. 36 at 6.) If NEM Re is

suggesting that the statute of limitations for a breach of contract action began to run as of May of 2009, this argument is also without merit. As outlined in the March 24 Order, the Court found that the statute of limitations started to run in 2004 and expired in 2010.[5]

Alternatively, if NEM Re is attempting to use this communication as evidence of tolling, that argument is also unpersuasive.

The Court notes that the doctrines of "equitable tolling" and "equitable estoppel" are often distinguished by federal courts. See Coleman & Co. Sec. v. Giaquinto Family Trust, 236 F. Supp. 2d 288, 299 (S.D.N.Y. 2002); see also Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC, 842 F. Supp. 2d 502, 517 (S.D.N.Y. 2012) ("[U]nder the equitable tolling doctrine, a statute of limitations does not run against a plaintiff who was justifiably ignorant of his cause of action, and the doctrine of equitable estoppel may toll a statute of limitations where defendant's misconduct caused him to delay bringing suit.") (internal quotation marks omitted). However, "New York courts use the terms interchangeably to cover both the circumstances where

---

[5] NEM Re argues that even for a breach of contract action, the statute of limitations is tolled "while a fiduciary relationship exists between the parties." (Dkt. No. 38 at 6.) However, NEM Re provides no support for this proposition, and as the Court held in the March 24 Order, the statute of limitations for a breach of contract action began to run at the time NEM Re could legally demand payment.

the defendant conceals from the plaintiff the fact that he has a cause of action [and] where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit until after the period of limitations has expired." Coleman & Co. Sec., 236 F. Supp. 2d at 299 (internal quotation marks omitted).

The doctrines of equitable tolling and equitable estoppel are reserved for "'rare and exceptional circumstance[s],'" Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003) (quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000)), where "a party is 'prevented in some extraordinary way from exercising his rights.'" Id. (quoting Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996)).

A litigant seeking equitable tolling "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); see also Smith, 208 F.3d at 17; Bridgeway Corp. v. Citibank, N.A., 132 F. Supp. 2d 297, 303 (S.D.N.Y. 2001) ("Equitable tolling permits a party to sue after the passing of the statute of limitations if the party has acted with reasonable care and diligence.").

In the instant action, there is no reasonable basis for NEM Re to argue that it was not aware of the cause of action until May of 2009 because (1) Fortress sent NEM Re a check on May 13, 2004 (Dkt. No. 7, Ex. 2); (2) Glenn Drew, President of Fortress, wrote NEM Re regarding a settlement agreement related to additional funds held on behalf of Federated on November 29, 2004 (id., Ex. 3); and (3) NEM Re's outside counsel requested that Fortress remit all remaining funds held on behalf of Federated by letter dated May 23, 2005 (id., Ex. 4). Therefore, this Court will only consider the situation in which NEM Re would have been aware of the cause of action but was induced to forego suit until after the statute of limitations expired.

Under those circumstances, "[e]quitable tolling is generally considered appropriate in situations where the complainant . . . has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" Jacobsen v. The Stop & Shop Supermarket Co., No. 02 Civ. 5915, 2004 WL 1918795, at *3 (S.D.N.Y. Aug. 27, 2004) (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). In other words, equitable tolling "can overcome a statute of limitations defense if the 'plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" Sanders v. New York

-15-

City Dep't of Corrections, No. 07 Civ. 3390, 2009 WL
222161, at *4 (S.D.N.Y. Jan. 30, 2009) (quoting Abbas v.
Dixon, 480 F.3d 636, 642 (2d Cir. 2007)).

NEM Re has not provided any evidence or indication
that it was "'induced by fraud, misrepresentations[,] or
deception to refrain from filing a timely action.'" Id.
Therefore, there is no manifest injustice in denying
reconsideration of the Court's holding that the statute of
limitations had run on NEM Re's breach of contract claim.

In conclusion, the Court finds that there is no
manifest injustice in letting the March 24 Order stand and
thus denies reconsideration pursuant to Rule 59(e) and Rule
6.3.

B.   MOTION FOR RECONSIDERATION PURSUANT TO RULE 60(B)

NEM Re also moves for reconsideration of the March 24
Order pursuant to Rule 60(b). (Dkt. No. 36.) Although NEM
Re failed to substantively mention Rule 60(b) in its
opening memorandum of law, both the Opposition and Reply
address NEM Re's motion pursuant to Rule 60(b). (See Dkt.
Nos. 37, 38.) Therefore, the Court now turns to NEM Re's
arguments pursuant to Rule 60(b).

1.   Excusable Neglect

NEM Re's first argument is that its failure to file an
additional papers in opposition to Fortress's motion for

-16-

summary judgment constitutes excusable neglect under Rule 60(b)(1). (Dkt. No. 38 at 1-3.) As stated above, factors to be considered in evaluating excusable neglect include "'[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.'" Silivanch, 333 F.3d at 366 (citing Pioneer Inv. Servs. Co., 507 U.S. at 395). Based on the above factors, the Court is not persuaded that NEM Re has demonstrated excusable neglect under Rule 60(b)(1).

Despite the existence of this four-factor test, the Second Circuit has "focused on the third factor: 'the reason for the delay, including whether it was within the reasonable control of the movant.'" Id. ("But despite the flexibility of 'excusable neglect' and the existence of the four-factor test in which three of the factors usually weigh in favor of the party seeking the extension, we and other circuits have focused on the third factor: 'the reason for the delay, including whether it was within the reasonable control of the movant.'"); see also Thorpe v. Luisi, No. 00 Civ. 3144, 2005 WL 1863671, at *2 (S.D.N.Y. Aug. 4, 2005) (citing Williams v. KFC Nat. Management Co.,

391 F.3d 411, 415-416 (2d Cir. 2004)) ("The Second Circuit stresses that the 'third factor-the reason for the delay . . . predominates.'").

In evaluating this third factor, the "equities will rarely if ever favor a party who 'fail[s] to follow the clear dictates of a court rule.'" Silivanch, 333 F.3d at 366-67 ("We have . . . held that where 'the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the Pioneer test.'"); see Canfield v. Van Atta Buick/GMC Truck, Inc., 127 F.3d 248, 250 (2d Cir. 1997) ("But we do not believe that the possibility that a court may properly find excusable neglect on such grounds alters the principle that failure to follow the clear dictates of a court rule will generally not constitute such excusable neglect.").

Although the deadline was not prescribed by a court rule, the instant facts are analogous to Canfield, in which the Second Circuit affirmed the district court's holding that excusable neglect was unwarranted when the unambiguous language of a court rule required the plaintiff to respond to the defendant's motion for summary judgment by a specific deadline and the plaintiff failed to do so. See Canfield, 127 F.3d at 251; see also Silivanch, 333 F.3d at

-18-

368 ("In our cases addressing when neglect is 'excusable,' we have therefore taken a hard line. In Canfield, for example, we affirmed the denial of a motion to extend the time for responding to an adversary's dispositive motion when the attorney filed late, in violation of 'the clear dictates of a court rule,' because of his personal involvement in other affairs. The mere 'possibility that a court may properly find excusable neglect [where it consists of inadvertence, ignorance of the rules, or mistakes construing the rules does not] alter[ ] the principle that failure to follow the clear dictates of a court rule will generally not constitute such excusable neglect.'") (internal citations omitted).

Here, the deadline for NEM Re to file an opposition to the motion for summary judgment, if necessary, (see Dkt. No. 17) was "unambiguous." See Canfield, 127 F.3d at 251; see also In re Glob. Crossing, Ltd. Sec. Litig., No. 02 Civ. 910, 2004 WL 2584874, at *2 (S.D.N.Y. Nov. 12, 2004) ("Here, as in Canfield, the deadline was crystal clear and unambiguous.") (internal citations omitted). NEM Re was aware of this deadline as it submitted the Joint Scheduling Report and failed to either request an adjournment or file additional papers in opposition. See Martell v. Astrue, No. 09 Civ. 1701, 2010 WL 4159383, at *2 (S.D.N.Y. Oct. 20,

2010) ("At no point did plaintiff request an adjournment, express uncertainty or confusion about the court-ordered deadline, or acknowledge that she had failed to meet a clear filing deadline. Under these circumstances, we conclude that plaintiff failed to act with the requisite diligence and decline to grant relief under Rule 60(b)(1).") Therefore, the Court finds that NEM Re has not demonstrated excusable neglect under Rule 60(b)(1), and the Motion is denied on that basis.

2.  Default Judgment

NEM Re's second and third arguments pursuant to Rule 60(b) are that (1) the Court has broad discretion under Rule 60(b) in the case of default judgment and (2) NEM Re has met the Second Circuit's requirements for vacating a default judgment. The Court is unpersuaded by these arguments as the March 24 Order is not properly characterized as a default judgment against NEM Re.

Under Local Rules 55.1 and 55.2, which describe the process for obtaining an entry of default and default judgment under Rule 55 of the Federal Rules of Civil Procedure, a default judgment is only entered against a party who has failed to plead, defend the action, or respond to a claim. Local Rule 55.1 ("A party applying for a certificate of default by the Clerk pursuant to Fed. R.

Civ. P. 55(a) shall submit an affidavit showing . . . (2) that the party has failed to plead or otherwise defend the action . . . ."); Local Rule 55.2 ("In all other cases the party seeking a judgment by default shall apply to the Court as described in Fed. R. Civ. P. 55(b)(2), and shall append to the application . . . (2) a copy of the claim to which no response has been made . . . ."); see also Default Judgment, Black's Law Dictionary (10th ed. 2014) ("A judgment entered against a defendant who has failed to plead or otherwise defend against the plaintiff's claim."). Therefore, in the case of a motion for summary judgment, a default judgment can only be entered when the party against whom judgment is entered fails to respond or oppose the motion.

However, in the instant action, Fortress's motion for summary judgment was not unopposed. On July 27, 2015, Fortress filed a motion to dismiss the complaint (Dkt. No. 6) with NEM Re filing an opposition on August 4, 2015 (Dkt. No. 10). After Fortress filed its reply on August 11, 2015 (Dkt. No. 12), the Court held a telephone conference with the parties on August 18, 2015, indicating its intention to issue an order converting Fortress's motion to dismiss the complaint into a motion for summary judgment. (See Dkt. Minute Entry for Aug. 18, 2015.) On August 19, 2015, the

-21-

Court issued an order, converting the motion to dismiss into a motion for summary judgment and stating that "the parties may choose to submit additional papers to the Court." (Dkt. No. 13.) The Court also instructed the parties to submit a schedule for discovery and summary judgment submissions. (Id.) On September 18, 2015, NEM Re submitted the Joint Scheduling Report (Dkt. No. 16) which the Court endorsed on September 21, 2015 (Dkt. No. 17). The Joint Scheduling Report indicated that NEM Re was to file a "response to [the] dispositive motion [for summary judgment] if necessary" by February 15, 2016. (Id.) (emphasis added). NEM Re was not obligated to file an opposition to the motion for summary judgment but could rather rely on its previously-filed opposition to the motion to dismiss if it so chose or if the information obtained from discovery did not warrant an additional response. (See Dkt. No. 36 at 1) ("[The Court] directed . . . the Plaintiff to file its response to the converted motion if the facts unearthed during discovery merited it."). Since NEM Re did not file any additional papers in opposition, the Court relied on NEM Re's previously-filed opposition to the motion to dismiss. Therefore, the motion for summary judgment was not unopposed.

Even if the motion were unopposed, the Court did not grant summary judgment "merely on the basis of [NEM Re's] failure to respond" but rather "review[ed] the record and determine[d] whether [Fortress] ha[d] established that the undisputed facts entitle[d] it to judgment as a matter of law." Martell, 2010 WL 4159383, at *2 n.4 ("It is well-settled that when a district court is presented with an unopposed motion for summary judgment, it may not enter judgment for the moving party merely on the basis of the opposing party's failure to respond. Rather, a court must review the record and determine whether the moving party has established that the undisputed facts entitle it to judgment as a matter of law.") (internal citations omitted); see also Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004) ("Accordingly, we emphasize that courts, 'in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.'").

Therefore, the March 24 Order was clearly a decision on the merits, rather than a default judgment. See Martell, 2010 WL 4159383, at *2 n.4 ("As such, this Court thoroughly reviewed the record before entering its [] Memorandum and

Order, which is plainly a decision on the merits and not a default judgment."). Since the March 24 Order was not a default judgment, the Court denies NEM Re's Motion pursuant to Rule 60(b) on that basis.

### III. **ORDER**

For the reasons set forth above, it is hereby

**ORDERED** that the motion of plaintiff NEM Re Receivables, LLC ("NEM Re") pursuant to Local Rule 6.3 and Rule 59(e) and/or Rule 60 of the Federal Rules of Civil Procedure for reconsideration of the Court's Order granting summary judgment dated March 24, 2016 (Dkt. No. 35) is **DENIED**.

**SO ORDERED.**

Dated:     New York, New York
           4 May 2016

                              VICTOR MARRERO
                                 U.S.D.J.

-24-